David Martin CHAVEZ, Plaintiff,

v.

CITY OF OSCEOLA, City of Osceola Police Department, Stephen Niebur, Individually and in his Official Capacity, Frank Townsley, Individually and in his Official Capacity, and Charles Beeker, Individually and in his Official Capacity, Defendants.

No. 4:03–CV–40202.

United States District Court, S.D. Iowa, Central Division.

July 7, 2004.

Danielle I. Foster–Smith, Kuhle Law Office PC, West Des Moines, IA, for Plaintiff.

Gordon R. Fischer, Bradshaw, Fowler, Proctor & Fairgrove, Des Moines, IA, for Defendants.

## ORDER

GRITZNER, District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment (Clerk's No. 11). Defendants moved for summary judgment on Plaintiff's claims on May 20, 2004. Hearing was held on the motion on June 28, 2004. Attorney Danielle Foster–Smith appeared for Plaintiff, and attorney Gordon Fischer appeared for Defendants. The matter is now fully submitted for review. For the reasons discussed below, Defendants' Motion for Summary Judgment is granted.

## SUMMARY OF MATERIAL FACTS

Plaintiff David Chavez ("Chavez") is a graduate of the Des Moines Police Academy. On October 9, 2000, he was interviewed by then acting Osceola Chief of Police Stephen Niebur and was subsequently hired by Chief Niebur on a probationary status as a police officer for the City of Osceola Police Department. During his employment, Chavez was at all times supervised by Chief Niebur. Chavez, a Hispanic male of Mexican ancestry, was the only ethnic minority on the Osceola Police Department staff; all other members of the Osceola Police Department at the time of his employment were white and non-Hispanic.

From nearly the outset of Chavez' probationary employment, he had numerous performance issues. Early in his employment, Chavez seized a radar detector from a motorist, due to his mistaken belief that such a seizure was authorized under Iowa law. The irate motorist contacted the police department and complained about the seizure of his radar detector. Chief Niebur instructed Chavez that the Iowa law he was relying on did not apply to this particular situation, and Chavez was directed to return the radar detector to the motorist.

In November 2001, Chavez was reprimanded for using the department's phone line to make personal long distance telephone calls. Chavez claims that he was using the phone to call his brother, a detective in Chicago, to get information to pass on to the department. Chief Niebur testified that Chavez never provided him with a reason for the long distance phone calls; ultimately, Chavez reimbursed the department for the long distance calls.

Chief Niebur talked to Chavez numerous times about citizen complaints that the department was receiving regarding Chavez' demeanor towards the public during

traffic stops. In early March of 2002, Chavez received a one-day suspension without pay after working part time at Lakeside Casino without obtaining permission from Chief Niebur, as required by the police department's policy regarding outside employment. After his suspension, Chavez provided Defendant Niebur with a letter dated March 7, 2002, explaining why he accepted the part-time position at Lakeside Casino. Chavez also provided a second letter to Chief Niebur in which Chavez indicated that he believed he was being treated unfairly in comparison to other officers and that he had been informed that other officers were calling him a "spic" and "dirty Mexican" behind his back. Chavez was terminated from his probationary employment on March 26, 2002.

On April 14, 2003, Chavez filed a complaint alleging that his discharge from employment was motivated in substantial part by race, and in retaliation for complaints of discrimination and harassment, in violation of 42 U.S.C. § 2000e, 42 U.S.C. § 1983, and Iowa Code § 216. Chavez also asserts that he was subjected to a hostile work environment. Finally, Chavez claims that he was denied overtime pay in violation of the Fair Labor Standards Act and Iowa Code § 91A. Chavez seeks back pay, compensatory, punitive, and emotional distress damages, and attorney's fees and costs.

On May 20, 2004, Defendants filed a motion for summary judgment, asserting summary judgment is required because there exists no genuine issue of material fact on any of Chavez' claims. Defendants contend that there is no showing of causation between Chavez' allegedly protected conduct and the decision to terminate his employment. Defendants further claim that there is no evidence to support an inference of improper motivation, that compelling reasons for Chavez' termination exist, and that Chavez' performance during his probationary employment established a legitimate nondiscriminatory reason for his discharge. Defendants claim that Chavez' hostile work environment claim is also barred because Chavez cannot show any conduct directed at him because of his race, and the facts Chavez alleges are insufficient to establish a hostile work environment. Finally, Defendants assert that there is no evidence to support Chavez' wage claims.

## APPLICABLE LAW AND DISCUSSION

### A. Standard of Review

"[C]laims lacking merit may be dealt with through summary judgment under Rule 56." *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 998–999, 152 L.Ed.2d 1 (2002). Summary judgment is a drastic remedy, and the Eighth Circuit has recognized that it "must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1029 (8th Cir.2000). Summary judgment should seldom be granted in employment cases. *Bassett v. City of Minneapolis,* 211 F.3d 1097 (8th Cir.2000).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue."

*Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548); *see also Shelter Ins. Cos. v. Hildreth,* 255 F.3d 921, 924 (8th Cir.2001); *McGee v. Broz,* 251 F.3d 750, 752 (8th Cir.2001). Once the moving party has carried its burden, the opponent must show that a genuine issue of material facts exists. *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.,* 165 F.3d 602, 607 (8th Cir.1999). The court gives the nonmoving party the benefit of all reasonable inferences and views the facts in the light most favorable to that party. *de Llano v. Berglund,* 282 F.3d 1031, 1034 (8th Cir.2002); *Pace v. City of Des Moines,* 201 F.3d 1050, 1052 (8th Cir.2000); *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 366 (8th Cir.1997).

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Shelton v. ContiGroup Companies, Inc.,* 285 F.3d 640, 642 (8th Cir.2002) (citing *Henerey v. City of St. Charles,* 200 F.3d 1128, 1131 (8th Cir.1999)). Summary judgment should not be granted if the court can conclude that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991). In light of these standards, the Court considers the present motion.

## B. Title VII, ICRA Unequal Treatment Due to Race and Retaliation and 42 U.S.C. § 1983

### 1. Race Discrimination/Disparate Treatment

Because Chavez has presented no direct evidence of discrimination, his discrimination claims are analyzed under the burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Hannoon v. Fawn Engineering Corp.,* 324 F.3d 1041, 1046 (8th Cir.2003).

Under the first step of this analysis, a plaintiff must establish a prima facie case by demonstrating (1) that he is a member of a racial minority, (2) that he was qualified for the relevant position, (3) that there was an adverse employment action, and (4) that some evidence of record supports the inference of improper motivation. If the plaintiff makes this prima facie showing, the defendants must meet a burden of production in the second step to articulate a legitimate, non-discriminatory reason for the adverse employment action. Finally, if the defendants satisfy the second step, the burden returns to the plaintiff in the third step to prove that the defendants' proffered reason is raised merely as a pretext for discrimination.

*Id.* at 1046 (internal citations omitted). As a Hispanic male of Mexican ancestry, Chavez is a member of racial minority.

Chavez must next establish that he was qualified for his position. From nearly the outset of Chavez' probationary employment, he had numerous performance issues. In July 2001, Chavez illegally confiscated a radar detector from a motorist and was ordered by Chief Niebur to return the property to the motorist and apologize. Chavez admits that he made an error regarding the seizure of the radar detector, stating the he had relied on a manual that indicated radar jamming devices were illegal and subject to seizure under Iowa law.

In November 2001, Plaintiff was orally reprimanded for using the police department phone to make personal long distance phone calls. Chavez claims that he was using the phone to call his brother, a detective in Chicago, to get information to

pass on to the department. Chief Niebur testified that Chavez never provided him with any reason for the long distance phone calls. Ultimately, Chavez reimbursed the police department for the cost of the long distance calls.

On January 18, 2002, Plaintiff allegedly called in for emergency leave but provided no reason for the leave. On January 30, 2002, Plaintiff was reprimanded by the Chief for missing a court hearing. Chief Niebur testified that on February 5, 2002, Chavez requested permission to work part time at Lakeside Casino. Chief Niebur informed Chavez that officers were not allowed to work off duty anywhere that served liquor because of the dangers drunken patrons pose to officers. Despite this conversation, Chavez worked part time at the casino, in violation of department policy which requires that an officer must submit a written request to the Chief of Police and obtain approval for any outside employment. Chavez was consequently suspended for one day without pay. Chavez also testified that Chief Niebur called him into his office approximately three different times regarding citizen complaints that Chavez was being rude to the public during traffic stops.

It is undisputed that Chief Niebur orally counseled Chavez several times regarding his behavior and citizen complaints. Although he certainly had the credentials to become a police officer, it is questionable whether Chavez was meeting Defendants' legitimate expectations at any time before he was fired.

Assuming that despite the above-mentioned transgressions, Chavez was meeting Defendants' legitimate expectations and was qualified for the position, the next step of the analysis would require Chavez to demonstrate that he suffered an adverse employment action. Chavez asserts that he suffered the adverse employment action of being terminated from his employment;

neither party disputes that Chavez's employment was terminated by Defendants, and there is no doubt that being terminated from one's employment is sufficient to show that an adverse employment action occurred.

■ Finally, as part of his prima facie case, Chavez must offer some evidence which would give rise to an inference of unlawful discrimination. Chavez asserts that non-members of the protected class, white non-Hispanic police officers, who were similarly situated, were not disciplined for the same or similar infractions of police department policy. An inference of improper motivation can be demonstrated by showing that similarly situated employees, who are not members of the protected group, were treated differently. *Jacob–Mua v. Veneman,* 289 F.3d 517, 522 (8th Cir.2002).

Chavez urges the Court to compare him to fellow officer Shane Blakely, a white non-Hispanic police officer who was hired after Chavez. Blakely also missed a court date but did not receive a written reprimand. Chief Niebur testified that he did initially give Chavez a written reprimand for missing a court date. He further testified that he thereafter reviewed his notes regarding how other officers who missed their court dates were disciplined. Upon discovering that he generally only gave an oral reprimand for such an offense, Chief Niebur changed Chavez's written reprimand to an oral reprimand.

Chavez contends that calling in traffic stops was at the discretion of the officer and that not all officers called in traffic stops, yet other officers were not counseled about their failure to call in traffic stops. Chavez does not point to another *probationary* employee who failed to call in traffic stops yet was not disciplined.

Chavez also claims that other officers were allowed to work part-time jobs, yet

he was suspended for working part time at Lakeside Casino. There is no evidence in the record that any other officer has been allowed to work at an establishment that serves alcohol, and Chavez has failed to point to any other officer who violated the department's policy regarding outside employment without being subjected to disciplinary action. Rather, the record shows that other officers engaged in part-time employment that complied with the department's policy.

██ Finally, Chavez claims that Defendant Frank Townsley was allowed to violate several department policies yet was not disciplined. A review of Townsley's personnel file, which has been submitted under seal, reveals that assertion is simply inaccurate.[1]

██ To show that other employees were similarly situated, Chavez is required to point to individuals who "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon,* 218 F.3d 915, 918 (8th Cir.2000); *Marquez v. Bridgestone/Firestone, Inc.,* 353 F.3d 1037, 1038 (8th Cir.2004). Chavez has failed to point to any other officer at the Osceola Police Department, who, with Chief Niebur as their supervisor, engaged in the same numerous infractions during their probationary employment without being terminated. "For discriminatory discipline claims, employees are similarly situated only when they are involved in or accused of the same offense and are disciplined in different ways." *Wheeler v. Aventis Pharmaceuticals,* 360 F.3d 853, 858 (8th Cir.2004) (citing *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 972 (8th Cir.1994)). In the present case, the record supports the conclusion it was the

culmination of various transgressions, and not Chavez' race, that lead to Defendants' decision to terminate Chavez' employment. Chavez has not made out a prima facie case of discrimination.

██ Even if Chavez could establish his prima facie case of discrimination, which the Court finds he has not, Defendant is able to articulate a legitimate, nondiscriminatory reason for its decision to terminate Chavez' employment. Defendants maintain that Chavez was terminated from his probationary employment after confiscating a citizen's radar detector, missing a court date, failing to call dispatch during routine traffic stops, being counseled by the Chief regarding his rudeness to citizens, violating the department's outside employment policy, and various other infractions. Because Defendants are able to provide a legitimate nondiscriminatory reason for Chavez' termination, the burden would shift back to Chavez to prove that the Defendants' proffered reason is raised merely as a pretext for discrimination.

In support of his contention that Defendants' proffered reason for his termination was pretextual, Chavez argues that Defendants have made different representations as to why Chavez was terminated. First, Chavez claims that he was told on March 26, 2002, that he was terminated because his wife called Chief Niebur inquiring about Chavez' pay, and Chief Niebur felt threatened. Other than this single assertion contained in Chavez' memo in support of his resistance, there is no other documentation in the record to support that this was the reason given to Chavez for his termination on the day he was fired. Second, Chavez claims that Officer Edward Stoll testified that he was told that Chavez was terminated because of his part-time

---

1. The Court has reviewed the file materials under seal. It is not necessary for purposes of this order to reveal the confidential contents of such a personnel file. The information contained in the confidential files provides no support for the Plaintiff's allegations.

employment at Lakeside Casino. Officer Stoll testified during his deposition as follows:

Q: Do you believe David Chavez should have been terminated?

A: No.

Q: Why not?

A: I believe David Chavez is a decent officer. I don't think he was terminated for the right reasons, *at least the reasons I know.*

Q: That he was terminated—I'm sorry, would you say that again?

A: *As far as I know* he was initially suspended and then terminated for having outside employment without the Chief's knowledge or without the Chief's approval. I don't understand how that is a suspension or a firing offense.

(Emphasis added.) Officer Stoll never indicated where he received his information regarding the reason for Chavez' termination, and there is no evidence to indicate that he was given the information by Defendants. Further, Stoll's testimony expressly acknowledges that he was not aware of all of the reasons behind the decision to terminate Chavez. Officer Stoll was necessarily speculating, and counsel for the Plaintiff engages in further speculation in argument based upon this testimony. The Court cannot identify a genuine issue of material fact based upon such analysis.

Finally, Chavez claims that Defendants represented to the Iowa Civil Rights Commission that he was terminated for the following reasons: for unlawfully seizing a radar from a citizen; for using the department phone to make personal long distance phone calls; numerous citizen complaints; falsifying the activity log to show he arrived at 1400 hours instead of when he actually arrived, which was 1450; calling in for emergency leave without stating a reason; missing a court date; working

part time at Lakeside Casino contrary to department policy; and several more citizen complaints regarding Chavez' demeanor with the public. These are the same reasons Defendants offer in the present action. The record supports no conclusion of inconsistency in the bases for the termination decision.

Chavez also claims that Defendants' proffered reasoning for his termination can be found to be pretextual due to the fact that there was no written policy which dictated termination from employment for working part time and because no documentation regarding the citizens' complaints was placed in Chavez' file. Neither of these are sufficient to show that Defendants' proffered reasoning for Chavez' termination is a pretext for discrimination. Although there is no written policy stating that an officer shall be terminated for violating the department's outside employment policy, Defendants have repeatedly indicated that Chavez was not terminated simply because of his part-time employment at the casino, but because of the culmination of his behavior during the course of his probationary employment. Further, it simply is not feasible to produce documentation on every single informal complaint made regarding an officer, and Chavez does not dispute that Chief Niebur spoke with him numerous times regarding citizen complaints.

■ "The threshold question when considering pretext is whether [the employer's] reasons for its employment actions are true, not if they are wise, fair or correct." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 837 (8th Cir.2002). Examining Defendants' ultimate decision to terminate Chavez' employment would require the Court to evaluate the personnel decisions of Defendants. Where Defendants' personnel decision concerning Chavez' continued employment with the police

department was not motivated by Chavez' race, and there is no evidence in the present case that it was, the Court will not second guess the employer's judgment with regard to personnel decisions. The record fully supports a conclusion that it was Chavez' performance while on probationary status with the police department, and not his race, that was the driving force behind Defendants' decision to terminate his employment. While there is an inference in this record that some citizen complaints may have been, in part, racially motivated, that motivation does not generate factual issues as to the Defendants.

Chavez cannot make out his prima facie case of discrimination; and, even assuming *arguendo* that he could, he cannot show that Defendants' proffered reason for the termination of his employment is merely a pretext for discrimination. Poor performance by a probationary employee is an obvious basis for termination of employment and should be disturbed by a court only upon a factual showing of a genuine issue of fact regarding the involvement of a legally impermissible motivation.

### 2. Harassment/Hostile Work Environment

In support of his claims of harassment, Chavez points to a number of incidents that occurred during his probationary employment. Chavez asserts that his locked desk was opened, packaging material was poured into the desk, and that files and a telephone subpoena were removed from his desk. Chavez also stated that in an incident directed specifically at him, the front driver's side seatbelt of one of the department's squad cars was saturated with perfume. Chavez asserts that his office chair was also saturated with perfume to the degree it could not be used. Chavez states that he removed the chair from his desk approximately nine times, and that the chair always reappeared at his desk regardless of where he had hidden it. Chavez also claims that his name was removed from his locker approximately five times, and that while working for the department, he was called "spic" and "dirty Mexican" by citizens when he pulled them over for traffic stops.

Chavez claims that Officer Charles Beeker ("Beeker") made an adverse statement about him in the presence of others, including making racial comments in the presence of other police officers and/or staff, and that Beeker treated him in a disrespectful and condescending manner while treating white non-Hispanic officers more favorably. Other than Chavez' own assertion, there is no evidence in the record to support this claim. Officer Beeker admitted that during an argument with Chavez, he indicated he would do whatever he could to get Chavez fired; however, Beeker states that he only made this comment after Chavez repeatedly called him a liar during the same argument. There is no independent evidence indicating that Beeker ever made any racial comments or that he treated white non-Hispanic officers more favorably.

In maintaining that he was harassed by fellow police officer Frank Townsley, Chavez asserts that in June of 2001, while conducting patrol with Townsley, Townsley made the comment that "they hate fuckin' Mexicans here." Chavez also described an incident that occurred when he dropped a squad car off at Townsley's residence at the end of his shift so that Townsley could use the car for his next shift. Chavez testified that Townsley was unhappy that he was receiving an older squad car and began yelling at Chavez, challenging him to a fight. Chavez left Townsley's house, and the incident never escalated beyond yelling. Chavez also claims that Townsley failed to provide backup to him during a drug related traffic stop.

To sustain a claim against an employer for a racially hostile work environment,

a plaintiff is required to show: (1) he or she is a member of a protected group, (2) he or she was subjected to unwelcome harassment, (3) the harassment was based upon race, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the racially discriminatory harassment and failed to take prompt and effective remedial measures to end the harassment.

*Willis v. Henderson*, 262 F.3d 801, 808 (8th Cir.2001). As a Hispanic male of Mexican ancestry, there is no question that Chavez is a member of a protected group. Chavez must next establish he was subjected to unwelcome harassment that affected a term, condition, or privilege of employment.

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *see also Gipson v. KAS Snacktime Co.*, 171 F.3d 574, 578 (8th Cir.1999). Most of incidents cited by Chavez in support of his claim of a hostile work environment can be classified as nothing more than pranks, which albeit possibly annoying to Chavez, do not amount to a hostile work environment under Title VII. Further, Chavez has provided no evidence which would indicate that any of the alleged incidents of harassment were based

on his race.[2] Chavez' claim that Townsley failed to or refused to provide backup, if true, would be a matter to be taken more seriously; however, the only evidence in the record regarding Townsley's alleged failure to provide backup to Chavez stems from one stormy night when Chavez was on duty and requested backup on a traffic stop. Townsley and the other officer on duty did not respond. Chavez himself admits he does not know why they did not respond, and there is no evidence in the record to show that either officer, specifically Townsley, purposefully failed to respond to Chavez' request for backup based on his race or as a means of harassment. Other than this one time, Chavez can point to no other incident during his employment that he did not receive backup when he requested it.

■ Assuming the record supported the claim that Chavez was subject to unwelcome harassment, Chavez would be required to show that the alleged harassment was based on race. "Generally, a plaintiff alleging racial or national origin harassment would present facts showing that he was subjected to racial epithets in the workplace." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir.2002). Chavez has pointed to only one instance in which a comment regarding race was allegedly made in his presence. Chavez claims that while on patrol together, Townsley stated to him, "they hate fuckin' Mexicans here." Townsley denies ever making such a comment. Viewing the facts in the light most favorable to Chavez, even assuming that this statement was made by Townsley, Chavez himself indicated that he took the use of the word "they" to mean the citizens of Osceola.[3] In addi-

---

2. Chavez does assert that citizens would use derogatory language toward him during traffic stops, but Defendants cannot be held legally responsible for the actions of the public at large.

3. At hearing, counsel for the Plaintiff seemed to argue that the term "they" somehow referred to Townsley or other members of the police department. In the absence of other supporting evidence, there is no reason for

tion to the statement allegedly made by Townsley, Chavez asserts that a state trooper, whom he believes is named "Mike", told him that fellow officers were referring to him as a "spic" and "just another Mexican ... working somebody else's job." It is questionable whether a third-hand allegation regarding the use of derogatory terms is sufficient to create a hostile work environment. In addition, other than his own claims that "Mike" told him derogatory terms were being used, there is no other evidence in the record to support such a claim, and Chavez has not produced a deposition or affidavit from "Mike" to illustrate that such evidence would ever be in an admissible form.

■ "'[M]ere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (quoting *Meritor Sav. Bank, FSB, v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). It is only where such conduct becomes so "severe or pervasive" that a Title VII violation may exist. *Id.* The Eighth Circuit Court of Appeals has held that a few isolated racial slurs are not sufficient to violate Title VII. *See Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981). Finding "no steady barrage of opprobrious racial comment," the Eighth Circuit in *Bunny Bread* discussed that "[t]he use, if any, of racial terms was infrequent" and limited to "casual conversation among employees." *Id.* "Such slurs ... were largely the result of individual attitudes and relationships which, while certainly not to be condoned, simply do not amount to violations of Title VII." *Id.*

■ Other than the incident involving Townsley's alleged statement regarding Mexicans and the information regarding the use of racial slurs provided to Chavez by "Mike", Chavez has produced no other evidence regarding the use of any racial slurs by fellow officers during his employment with Defendant. Even assuming the conduct Chavez alleges actually occurred, it is does not rise to a level making such comments severe and pervasive in violation of Title VII. "[M]ore than a few isolated incidents of harassment must have occurred. Racial comments that are merely part of casual conversation, [or] are accidental, or are sporadic[,] do not trigger Title VII's sanctions." *Bunny Bread Co.,* 646 F.2d at 1257 (quoting *EEOC v. Murphy Motor Freight Lines, Inc.,* 488 F.Supp. 381, 384 (D.Minn.1980) (citations omitted)).

Chavez asserts that even Officer Stoll characterized the incidents described above as harassment. Officer Stoll testified as follows:

Q: Mr. Chavez has characterized the things that happened to him at the Osceola Police Department as harassment. Do you have an understanding or a definition for the word harassment?

A: My definition of harassment is the same as criminal harassment in the criminal code books.

Q: Could you explain that?

A. To intimidate or alarm or bother somebody inappropriately. That's what it means.

Q. In your opinion the things that you personally know of and the things that you have heard about happening between Chavez and Townsley and/or Beeker, do you characterize

---

the Court to conclude the term "they" was used in such an uncharacteristic fashion. The Court will assume a term is used in its ordinary sense in the absence of contrary evidence.

those incidents as harassments as you understand it?

A. The perfume thing I would call harassment.

Yet Stoll testified later in his deposition that he had no reason to believe that Chavez was harassed, treated differently than anyone else at the department, disciplined, or terminated because of his race.

■ Under the facts of this case, Chavez has not demonstrated that the work environment at the Osceola Police Department was "so excessive and opprobrious as to constitute an unlawful employment practice under Title VII." *Cariddi v. Kansas City Chiefs Football Club, Inc.*, 568 F.2d 87, 88 (8th Cir.1977). "A work environment must be dominated by racial hostility and harassment to rise to the level of a Title VII violation." *See Ways, Sr. v. City of Lincoln*, 871 F.2d 750, 754 (8th Cir.1989) (citing *Gilbert v. City of Little Rock*, 722 F.2d 1390 (8th Cir.1983)). While it is certainly understandable that if fellow officers were indeed using racial slurs in reference to Chavez behind his back, this would have been perceived as offensive to Chavez once he found out; however, the law does not provide a remedy for all circumstances of thoughtless behavior in the workplace. The record fails to demonstrate that Chavez was subjected to a work environment dominated by racial hostility and harassment sufficient to rise to the level of a Title VII violation.

### 3. Retaliation

■ To establish a prima facie case of retaliation, Chavez has the burden to show that he engaged in protected activity, that Defendants took adverse action against him, and that there was a causal connection between those two actions. *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1028 (8th Cir.2004).

■ Chavez claims that after his suspension for working part time at Lakeside Casino, he provided Chief Niebur with two letters, one explaining his reasoning for working the part-time job, and the second letter stating that Chavez believed that he had been harassed and that he was being called ethnically derogatory names by his fellow officers. The record does contain a letter from Chavez addressed to the Chief; however, the date on this letter is illegible. In any event, in the letter Chavez clearly indicates that he had been informed by another officer that he was being called a "dirty Mexican" and a "spic". "Protected activity is an informal or formal complaint about, or other opposition to, an employer's practice or act ... if the employee reasonably believes such an act to be in violation of the statute in question." *Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir.2002) (internal quotation marks omitted) (citing *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir.2000)). The Court can conclude Chavez' letter of complaint to the Chief serves as his protected activity, and the termination of Chavez from employment is sufficient to show that he suffered an adverse employment action.

■ Chavez must next demonstrate a causal connection between his termination from employment and his letter to Chief Niebur regarding the alleged harassment. Chavez contends that the nature of the complaint and the timing of his termination alone should be sufficient to show the requisite causal connection. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999); *see also Scroggins v. University of Minnesota*, 221 F.3d 1042, 1045 (8th Cir.2000); *Nelson v. J.C. Penney Co., Inc.*, 75 F.3d 343, 346–47 (8th Cir.1996); *Feltmann v. Sieben*, 108 F.3d 970, 977 (8th Cir.1997). Despite the

Plaintiff's argument herein, the mere coincidence of timing does not establish a submissible case of retaliatory discharge. *Nelson,* 75 F.3d at 346.

■■■ Chavez offers no further proof in support of the requisite causal connection, and there is nothing in the record to suggest that Chavez was terminated from employment due to his letter of complaint to the Chief. Even assuming, in the light most favorable to Chavez, that he could establish his prima facie case of retaliation, which the record demonstrates he cannot, as discussed above, Defendants have provided a legitimate, nondiscriminatory reason for his termination, namely, Chavez had been subject to numerous policy violations and citizen complaints during his probationary period of employment. The reasons proffered by Defendants are valid reasons for deciding to terminate an employee's probationary employment. As Defendants have set forth a legitimate nondiscriminatory reason for deciding to terminate Chavez' employment with the Osceola Police Department, the burden would shift back to Chavez to show that Defendants' proffered reason is pretextual. *Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021, 1028 (8th Cir.2002).

Other than Chavez's mere speculation that he was terminated from employment because of his letter of complaint, no evidence has been produced in the record which would support an inference that Defendant's proffered reasons for its decision to terminate Chavez' employment was a pretext for retaliation. "Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Stone Motor Co. v. General Motors Corp.,* 293 F.3d 456, 465 (8th Cir.2002). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Nat'l Bank of Commerce v. Dow Chem. Co.,* 165 F.3d 602, 610 (8th Cir.1999).

**4. ICRA**

■■■ Where a plaintiff does not present separate arguments under the ICRA, state civil rights claims are addressed together with Title VII claims. *Hannoon,* 324 F.3d at 1046 (citing *Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'n,* 322 N.W.2d 293, 296 (Iowa 1982)) (federal cases persuasive in selecting the analytical framework for deciding discrimination cases under the ICRA); *see also Mercer v. City of Cedar Rapids,* 308 F.3d 840, 846 n. 2 (2002). Because Chavez' discrimination, hostile work environment, and retaliation claims under Iowa Code § 216 are premised on the same factual bases as his Title VII claims, they must also fail.

**C. Violation of Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and Violation of Iowa Code § 91A**

Chavez had claimed that Defendant willfully failed to pay over to him compensation, in violation of the Fair Labor Standards Act and Iowa Code 91A. While this claim was effectively withdrawn during argument, it is appropriate to provide some further explanation of both the Court's view and the likely basis for the withdrawal of the claim.

Chavez alleges he was denied overtime twice, for one and a half hours each time. Chavez contends that the first time he was denied overtime occurred when he conducted a OWI stop that took longer than usual, which resulted in him working three hours overtime. Chavez states that he was denied one and a half hours of this overtime and therefore was not paid for these one and a half hours. Chavez does not indicate with any detail when or how the second alleged denial of overtime pay

occurred. Defendants claim that Chavez' overtime claim is unsupported and that in addition, there is no evidence that they knew Chavez was working overtime.

 "The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours." *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1081 (8th Cir.2000) (citing 29 U.S.C. § 207). "As a general rule, under the FLSA, employees are entitled to overtime pay in the form of one-and-one-half times their regular hourly rate for each hour worked over forty in a work week. However, Congress created an exemption for public employees engaged in fire protection or law enforcement activities." *Lang v. City of Omaha*, 186 F.3d 1035, 1036–37 (8th Cir.1999) (citation omitted); *see also* 29 U.S.C. § 207(k); 29 C.F.R. § 553.201. This exemption allows a public employer to schedule law enforcement personnel for up to 171 hours of work in a twenty-eight day period before becoming liable for overtime compensation. *Lang*, 186 F.3d at 1037.

 The FLSA clearly indicates that with regards to law enforcement activities, until the hours worked by the employee exceed the 171 maximum for a 28–day pay period, the employer does not owe compensation for overtime. Chavez has not asserted that the total of three hours of overtime for which he was allegedly denied pay were worked in excess of the statutorily defined 171 maximum hours. In addition, Chavez does not specifically state on what dates he was allegedly denied the wages. There is a two-year statute of limitations on enforcement actions for wages. *See* 29 U.S.C. § 255(a); Iowa Code § 614.1(8).

"Mere arguments or allegations are insufficient to defeat a properly supported motion for summary judgment; a non-movant must present more than a scintilla

of evidence and must advance specific facts to create a genuine issue of material fact for trial." *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir.1997) (internal quotation marks omitted) (citing *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir.1995)). Other than his own allegations, Chavez has failed to produce any evidence which demonstrates he has not been compensated for the hours he worked, and at hearing Chavez conceded that his complaints under the FLSA and Iowa Code § 91A should be dismissed.

## CONCLUSION

The Court finds there is no genuine issue of material fact on the essential claims, and judgment may be entered as a matter of law. The Defendants' Motion for Summary Judgment (Clerk's No. 11) is **granted**.

**IT IS SO ORDERED.**