# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-3825

———————

Adolfo Ramirez,

        Appellant,

     v.

Gencorp, Inc., doing business as
GDX Automotive,

        Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Arkansas.
\*
\*  [UNPUBLISHED]
\*
\*

———————

Submitted: May 19, 2006
Filed: September 14, 2006

———————

Before LOKEN, Chief Judge, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

———————

PER CURIAM.

Adolfo Ramirez filed this action against GDX Automotive alleging employment discrimination pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), and breach of contract stemming from GDX's decision to terminate his employment. Ramirez appeals the district court's[*] decision to grant summary judgment in favor of GDX on his employment discrimination claim, and we affirm.

---

[*]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

Ramirez began his employment with GDX at the company's facility in Batesville, Arkansas, in January 1989 as a production floor employee. He was steadily promoted and became a supervisor in March 1994. Beginning in December 2001, the Area Manager of Ramirez's division, and Ramirez's immediate supervisor, was Don Mills. The small business unit manager, Mills's immediate supervisor, was Scott Conger. Following Conger's promotion to operations manager of the Batesville facility and Mills's promotion to small business unit manager, Ramirez was promoted to Area Manager on January 2, 2003, at Mills's recommendation.

Soon thereafter, Mills and Conger became displeased with Ramirez's performance as Area Manager. Mills reported that Ramirez fought him over changes made by management due to a downturn in business, and that Ramirez was letting his friendships interfere with the work performance of those whom he supervised. Mills and Conger averred that Ramirez was often unavailable when needed and could not be found in his office or on the production floor. Ramirez asserted that the conflict with Mills and Conger was due to his "positive discipline" style of management, which, according to Ramirez, conflicted with the desires of his supervisors to have Ramirez act as a "hatchet person, terminating employees for fraudulent reasons in violation of the union contract procedure." Mills and Conger met with Ramirez on two occasions to express their dissatisfaction with his performance.

Pursuant to a written agreement between Ramirez and GDX, the first 90 days in his new job as Area Manager was an "evaluation period to give both [Ramirez] and the Company the opportunity to determine if [he] want[ed] to remain as [Area] Manager or return to [his] old position as Supervisor." By mid-February 2003, Ramirez had decided that he did not want to continue as an Area Manager. He approached Mills about returning to his old supervisor position. Mills responded, "[a]migo, you can do this job," encouraging Ramirez to remain an Area Manager. Ramirez testified that he was insulted by the "amigo" reference, and thought that Mills was being disingenuous by calling him "amigo," since Ramirez was terminated a few

weeks later.  In addition, Mills occasionally had asked Ramirez jokingly during staff meetings to produce his "green card."

In March 2003, prior to the expiration of Ramirez's 90-day evaluation period, Conger determined that the Area Manager position occupied by Ramirez should be eliminated, as part of an ongoing reduction in workforce at the Batesville facility. Another employee had replaced Ramirez as supervisor when Ramirez was promoted, and at the time of Conger's decision to eliminate the Area Manager position, no supervisor position was available to which Ramirez could return.  On March 14, 2003, GDX terminated Ramirez as part of the workforce reduction, but retained three other employees working as production supervisors at the time.

Ramirez brought this action against GDX based on his termination, alleging a claim of discrimination based on his Hispanic national origin, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and a claim for breach of Ramirez's promotion agreement entitling him to a 90-day evaluation period.  The district court granted summary judgment in favor of GDX on the discrimination claim.  The court then declined to exercise supplemental jurisdiction over the breach of contract claim, and dismissed it without prejudice.  *See* 28 U.S.C. § 1367(c)(3).  We review *de novo* the district court's decision to grant summary judgment for GDX.

Ramirez does not take issue with the district court's analysis of his discrimination claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), but argues that he presented sufficient evidence to create a genuine issue for trial on the question whether the company's stated reason for its decision was a pretext for discrimination.  In proffering its reason for the employment action, GDX explained that it eliminated the Area Manager level of management as part of its workforce reduction.  The company maintained that it then chose to terminate Ramirez, rather than any other production supervisor, because of his poor job performance as Area Manager and clashes with management.  These

are legitimate, non-discriminatory reasons to terminate Ramirez. *See Groves v. Cost Planning & Mgmt. Int'l, Inc.*, 372 F.3d 1008, 1009 (8th Cir. 2004) (per curiam) (reduction in workforce); *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1047 (8th Cir. 2003) (poor job performance).

Ramirez concedes that GDX was undergoing a valid workforce reduction at the time he was terminated, but he contends that discriminatory motives were a factor in the decision by Mills and Conger to terminate him. We agree with the district court that Ramirez has not presented a submissible case that the company's explanation was a pretext for unlawful discrimination.

Although evidence of similarly-situated employees of a different national origin receiving more favorable treatment can demonstrate pretext, *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004), Ramirez has not introduced evidence demonstrating that the three production supervisors remaining after his termination were similarly situated. Ramirez admits that when Conger made his termination decision, the remaining three supervisors were performing their respective jobs satisfactorily. The record establishes that Mills and Conger perceived that Ramirez performed poorly as Area Manager, and although Ramirez asserts that this reason is pretextual, he has not directed us to evidence suggesting that GDX's perception was unfounded or that would create a dispute about whether the company truly believed that he was performing poorly. Because Ramirez was the only one of the four available production supervisors who was perceived as performing his job poorly, he is not similarly situated to the three supervisors GDX retained. Ramirez also has failed to show that GDX deviated from its own policies when it terminated Ramirez. The company did not have a policy of promoting or retaining employees based on seniority, but instead based these decisions on performance. Accordingly, a reasonable jury could not deduce from this evidence that Ramirez was chosen to be terminated because of his national origin. *See Russell v. TG Mo. Corp.*, 340 F.3d 735, 746 (8th Cir. 2003).

Conger's decision not to promote Ramirez in December 2001 similarly does not support an inference that GDX's stated reasons for terminating him in March 2003 are pretext. In December 2001, Conger approached Ramirez and interviewed him in consideration for a promotion to an engineering position. But in January 2002, Conger promoted another employee to this position. Ramirez contends that this was "the first act of discrimination by Scott Conger, bypassing [him] for a white male." Conger explained that he decided not to promote Ramirez after he learned that Ramirez had received a disciplinary action notice for falsely recording that he had worked eight hours when he had only worked seven on a date in December 2001. Ramirez testified that the disciplinary action could not have factored into Conger's promotion decision, and disputes the accuracy of the disciplinary action, contending that a disgruntled employee, whom Ramirez had previously disciplined, filed a false report in retaliation.

We do not agree with Ramirez's assessment of the evidence. For purposes of summary judgment, we must assume that the accusation was fabricated, and that Ramirez actually worked eight hours on the date in question. Ramirez has not introduced evidence, however, that Conger knew or should have suspected that the accusation was unfounded. The evidence is undisputed that Conger received the report and had no reason to question its veracity. *See Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000). Conger's decision not to promote Ramirez in reliance on the claim made in the report was a legitimate business decision, *see Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc), and Ramirez has introduced no evidence that Conger's decision not to promote him in January 2002 was motivated by Ramirez's national origin.

Finally, Ramirez alleges that derogatory comments made by Mills, calling Ramirez his "amigo," and making references to Ramirez's "green card," establish pretext. Assuming these comments could reasonably be interpreted as derogatory, Ramirez has not provided any evidence that the "amigo" and "green card" remarks were related to Mills's decisional process in terminating Ramirez. Many of our cases

involving this sort of "stray remark" involve assertions that the comments constitute "direct evidence" of discrimination, and we have held that statements by a decisionmaker unrelated to the decisional process are not such evidence. *Rivers-Frison v. Southeast Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 277-78 (1989) (O'Connor, J., concurring in judgment). We have incorporated this so-called "stray remarks doctrine" into our analysis of pretext in the *McDonnell Douglas* burden-shifting framework. *E.g.*, *Simmons v. Océ-USA, Inc.*, 174 F.3d 913, 916 (8th Cir. 1999); *Ghane v. West*, 148 F.3d 979, 982 (8th Cir. 1998); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315-16 (8th Cir. 1996). Given the evidence presented by GDX regarding Ramirez's poor job performance, the remarks made by Mills outside of the decisional process are insufficient without more to generate a genuine issue of fact on the question of pretext. *See Rivers-Frison*, 133 F.3d at 619; *see also Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994) (holding that stray remarks indicating age bias of decisionmaker were insufficient to generate submissible case of pretext in age discrimination case).

In the end, GDX, which was struggling through a slow economic period and was reducing its workforce at its Batesville facility, made a rational business decision to eliminate a level of management throughout the facility. Then, when faced with a choice to terminate one of four employees qualified for its three production supervisor positions, the company chose to dismiss the employee who it believed had performed his job poorly. Ramirez has not offered sufficient proof that he was terminated for any other reason.

The judgment of the district court is affirmed.

_____