# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1990

_____

| | | |
|---|---|---|
| Buford T. Satcher, | * | |
| | * | |
| Appellant, | * | |
| | * | On Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas |
| University of Arkansas at Pine | * | |
| Bluff Board of Trustees, | * | |
| Lawrence A. Davis, Jr., Mary | * | |
| Benjamin, William Willingham, | * | |
| Ebo Tei, Betty Griffith, Clifton Orr, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: December 11, 2008
Filed: March 3, 2009

_____

Before MELLOY and BENTON, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

MAGNUSON, District Judge.

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

Appellant Dr. Buford Satcher appeals from the District Court's[2] grant of summary judgment in favor of Appellee Board of Trustees of the University of Arkansas, Pine Bluff ("UAPB").  We affirm.

**BACKGROUND**

Satcher began teaching in the History Department at UAPB in 1981.  He was given tenure in 1987.  In 1999, he brought suit against UAPB, alleging that his removal as chairman of his department violated his constitutional rights.  The parties agreed to settle the matter early in the discovery process.  Defendants in that lawsuit (many of whom were also named as Defendants in this lawsuit) paid Satcher a nominal sum and, along with Satcher, agreed to use their "best efforts to foster and promote a spirit of harmony within the Department of Social and Behavioral Sciences." (J.A. at 261.)

Appellee Dr. Ebo Tei was named chairman of the Department of Social and Behavioral Sciences at UAPB in 1999.  His ascension to this position gave rise to Satcher's first lawsuit.  Satcher blames Tei for all of the problems within the department and essentially contends that Tei had a personal vendetta against him.

Not long after the first lawsuit was settled, things began to unravel.  According to Satcher, Tei "consistently worked behind the scenes to place Satcher in the worst light possible to UAPB Administration and characterized Satcher as a troublemaker . . . ." (App't's Supp. Mem. at 9-10.)  Appellees take a different view, cataloging Satcher's refusal to comply with or even acknowledge requests from Tei and other UAPB administrators.  For example, Satcher was required to file a report after his sabbatical in the fall of 1999.  Satcher refused to file the required report and

---

[2] The Honorable James M. Moody., United States District Court for the Eastern District of Arkansas.

eventually was asked to pay UAPB back the salary he received during his sabbatical. Satcher also refused to provide his curriculum vitae to, or meet with, members of the accrediting team responsible for UAPB's accreditation from the National Council for Accreditation of Teachers Education.

From 2000 to 2003, Satcher's relationship with Tei and with the UAPB administration grew more and more strained. Apparently believing that Tei was out to get him, Satcher began filming his own classes, those of other professors, and even student registration. He refused to attend faculty meetings. Satcher was repeatedly reprimanded for his behavior. In response, he sent letters to Tei and to the administration, accusing them of breaching the settlement agreement. These letters threatened another lawsuit and contained vituperative and insubordinate language. For example, in one letter he called Dr. Tei a "charlatan" and a "hypocrite." (J.A. at 142-46.)

The tension came to a head in the summer of 2003. After Satcher once again refused to provide Tei and the Dean with information they requested, Tei told Satcher that he would not be allowed to teach any classes in the 2003 summer session. Satcher claims that he got complaints from students that no one was teaching the class he was originally scheduled to teach. He then went to the class and started filming the apparent lack of an instructor. UAPB security officers removed Satcher from the classroom. After this incident, Satcher received a letter from the Dean warning him that further class disruptions would result in Satcher's termination. In August, however, Satcher began filming students registering for classes. Once again, UAPB security removed him from the area.

In response to Satcher's behavior, UAPB's Chancellor summoned Satcher to a meeting on August 25, 2003. Satcher did not show up at this meeting. Thereafter, the Dean decided to terminate Satcher's employment. He scheduled a meeting with Satcher for September 12, 2003, and sent Satcher notice of the meeting via certified

-3-

mail, regular U.S. mail, and hand delivery. The notice informed Satcher that the purpose of the meeting was to "discuss the future of [Satcher's] employment at UAPB." (J.A. at 70, 104-105, 130, 184.) Satcher failed to show up for this meeting.

According to UAPB's employment policy, the first step in terminating the employment of an employee with tenure is an informal meeting. The next step is notice to the Vice Chancellor for Academic Affairs of the grounds for dismissal. Because of Satcher's failure to attend the informal meeting, the Dean proceeded to prepare the statement of grounds for his dismissal. He sent this statement to the Vice Chancellor and to Satcher. Satcher refused delivery of the statement. The Vice Chancellor then forwarded the Dean's termination recommendation to the Chancellor. The Chancellor accepted the recommendation and sent notice to Satcher that his employment was being terminated for his unwillingness to perform his duties and fulfill his responsibilities to UAPB. The notice advised Satcher that he was entitled to a hearing on his termination. The termination was effective one year from the date of the Chancellor's notice, or October 31, 2004. Rather than seeking a hearing pursuant to UAPB policy, Satcher instead filed this lawsuit.

His Complaint initially claimed violations of the 1st and 14th Amendments, Title VII, 42 U.S.C. §§ 1981 and 1983, and state-law claims of breach of contract, outrage, false arrest, and battery. He named as Defendants the Board of Trustees of UAPB, Tei, the Chancellor, Vice Chancellor, and Dean,[3] and another individual whose role in the preceding events is less than clear. After motions to dismiss, the only remaining claims were claims against the Board and Tei of 1st Amendment retaliation, procedural and substantive due process violations, § 1981 race discrimination, and state-law claims of breach of contract and outrage. The Board and Tei moved for summary judgment, which the District Court granted as to all of the

---

[3] The Dean, Appellee William Willingham, died in the fall of 2006. He was not deposed prior to his death.

-4-

federal claims. The court then declined to exercise supplemental jurisdiction over the state claims and dismissed them without prejudice.

## DISCUSSION

### A. Standard of Review

This Court reviews the district court's grant of summary judgment de novo. Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 867 (8th Cir. 2008). In doing so, we apply the same standards the district court applied, viewing the evidence in the light most favorable to the non-moving party and giving the non-moving party the benefit of all reasonable inferences. Id. Summary judgment is proper only when no genuine issues of material fact remain for resolution and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B. Immunity

Appellees first argue that Satcher waived any argument that they are immune from suit under the 11th Amendment because he did not raise the argument in opposition to the motion for summary judgment. Satcher responds that failure to contest a point on summary judgment does not automatically entitle the moving party to summary judgment. He offers no citation for this proposition. It was his responsibility to show that there were genuine issues of material fact in the record that precluded the summary judgment Appellees sought below. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials . . ., but must set forth specific facts showing that there is a genuine issue for trial."). It was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact. See Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record

searching for nuggets of factual disputes to gild a party's arguments."). Contrary to Satcher's argument, failure to oppose a basis for summary judgment constitutes waiver of that argument.

Regardless of whether Satcher waived the argument below, however, his assertions with respect to immunity have no merit. He contends that Appellees waived their sovereign immunity because (1) they did not raise the issue of immunity until their motion for summary judgment, and (2) the settlement agreement in the first lawsuit provided that Satcher could return to court to enforce that agreement. Appellees pled sovereign immunity in their Answer to Satcher's Complaint, and did not thereafter waive it. See, e.g., Harmon Indus. v. Browner, 191 F.3d 894, 903 (8th Cir. 1999) (finding that sovereign immunity is a jurisdictional issue that may be raised for the first time on appeal). Satcher cites no authority for the proposition that sovereign immunity is waived if it is not raised in a motion to dismiss. Further, merely because the settlement agreement allowed the court to continue to exercise jurisdiction over that agreement does not constitute a clear and unequivocal waiver of all arguments about the court's jurisdiction in any other case Satcher might bring. See Burk v. Beene, 948 F.2d 489, 493 (8th Cir. 1991).

Satcher has failed to establish that the district court's conclusion about immunity was incorrect.

### B.    Retaliation

As with the immunity argument, Appellees contend that Satcher did not contest their motion for summary judgment as it related to his retaliation claims, and that he therefore waived those claims. Once again, he asserts that the District Court should have looked through the record and should have determined that there were genuine issues of material fact on his retaliation claims. As noted above, however, it was his responsibility, not the District Court's, to come forward with evidence showing that

factual issues existed. His failure to do that warranted the entry of summary judgment.

In addition, Satcher's retaliation claims fail on the merits. In his Complaint, Satcher contends that he was terminated for "speaking out on matters raised in his previous lawsuit" and for his "filing of a lawsuit which . . . exposed [Defendants'] illegal and discriminatory employment and hiring practices . . . ." (J.A. at 43 (Compl. ¶ 20).) He attempts to expand his claims in his brief, arguing that he was terminated for speaking in the summer session class in May 2003. Having not raised this fact in his Complaint, he cannot rely on it now. Moreover, he cannot show a causal connection between his allegedly protected speech and his termination. Jackson v. United Parcel Serv., 548 F.3d 1137, 1142 (8th Cir. 2008) (to prevail on retaliation claim, plaintiff must show causal connection between protected activity and adverse employment action).

Even if a causal connection existed, however, Appellees have succeeded in establishing that there was a legitimate, non-discriminatory reason for terminating Satcher's employment. See id. (applying McDonnell Douglas burden-shifting to retaliation claims). He was insubordinate on multiple occasions, refused to attend meetings or address the complaints about his behavior, and generally acted in a very unprofessional manner. UAPB had many legitimate reasons for firing him; therefore Satcher's retaliation claim fails.

## C.    Due Process

Similarly, Satcher's procedural due process claim fails. He chose not to avail himself of the procedures UAPB had in place for pre- and post-termination hearings. He cannot now complain that he did not receive the process he was due.

Likewise, his substantive due process claim lacks merit. To prevail on this claim, Satcher must show that UAPB administrators acted arbitrarily and capriciously, or in a way that shocks the conscience. Herts v. Smith, 345 F.3d 581, 587 (8th Cir. 2003). In Herts, the court found no substantive due process violation where the evidence showed that the plaintiff was fired in part for speaking at a public hearing on desegregation. Id. at 588. Satcher's contentions with regard to his termination do not rise to the level of a substantive due process violation.

**CONCLUSION**

For all of the above reasons, we conclude that the District Court's decision to grant summary judgment to UAPB was correct.

Accordingly, we affirm.

_____