[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14225
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-00298-MHC

MARINA D. GOODEN,

Plaintiff-Appellant,

versus

INTERNAL REVENUE SERVICE, et al.,

Defendants,

SECRETARY, U.S. DEPARTMENT OF THE TREASURY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 17, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Marina Gooden, proceeding *pro se*, appeals the district court's order (1) granting summary judgment in favor of the Secretary of the United States Department of the Treasury on her Title VII and Rehabilitation Act claims; (2) denying her motions for default judgment; and (3) dismissing her claims under the Federal Tort Claims Act, 28 U.S.C. § 1346.  Ms. Gooden argues that the district court erred in granting the Secretary's motion for summary judgment on her retaliation claim and her claims of disparate treatment and hostile work environment based on race, gender, and disability.  Ms. Gooden also contends that a default judgment should have been entered against the Secretary for not timely answering her initial complaint, and that the district court incorrectly concluded that Title VII preempted her FTCA claims.  After carefully reviewing the record and the parties' briefs, we affirm.

## I

We review a district court's grant of summary judgment *de novo*.  *See Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).  In doing so, we draw all inferences and review all of the evidence in the light most favorable to the non-moving party.  *Id.*  The party moving for summary judgment bears the burden of

demonstrating that there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law. *Id.*

Once that burden is met, the nonmoving party in response "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Ordinarily, a plaintiff may not rely on "mere allegations" in her complaint, "but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation and internal quotation marks omitted). In the case of a *pro se* plaintiff like Ms. Gooden, we liberally construe her pleadings. *See Trawinski v. United Techs.,* 313 F.3d 1295, 1297 (11th Cir. 2002). And we credit any "specific facts" pled in a sworn complaint when considering her opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).[1]

Ms. Gooden's failure to verify her amended complaint as provided in 28 U.S.C. § 1746 would normally preclude consideration of the allegations in that complaint. But the district court, adopting the magistrate judge's report and recommendations, accepted as evidence any allegation cited by the government in its statement of material facts, *see* D.E. 50-2, reasoning that the government had

---

[1] A day after the government moved for summary judgment, the clerk issued Ms. Gooden notice to respond and file all "affidavits, depositions, answers to interrogatories, admissions on file, and any other relevant materials" in opposition. *See* D.E. 51.

"essentially stipulated to these facts for the purposes of its motion for summary judgment." D.E. 66 at 4–5. We will also consider the allegations cited by the government in its statement of undisputed material facts. *See* D.E. 50-2.

## II

In her initial brief, Ms. Gooden argues that the district court erred in granting the Secretary's motion for summary judgment despite the existence of several genuine issues of material fact. Ms. Gooden specifically identifies four genuine issues of material fact, which she numbers sequentially throughout her brief. As explained, we will not consider these four issues because Ms. Gooden forfeited them by failing to raise them before the district court.

Interspersed among the four specific issues—and only under the most generous of readings—is a litany of tangential arguments bearing some relation to other issues Ms. Gooden *did* raise below. Normally, Ms. Gooden's failure to fully brief these other issues in her initial brief would constitute abandonment. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (explaining that "[a] party fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it, 'for instance by devoting a discrete section of his argument to those claims'") (quoting *Cole v. U.S. Atty. Gen.*, 712 F.3d 517, 530 (11th Cir. 2013)). But because Ms. Gooden is *pro se*, we liberally construe her

4

initial brief and identify three summary judgment issues preserved for appellate review.

The following two parts address the four specific issues enumerated by Ms. Gooden, and the three we have framed based upon a liberal reading of her brief. In the end, we affirm the district court's grant of summary judgment.

### III

Ms. Gooden specifically contends that four genuine issues of material fact preclude summary judgment: (1) "[w]hether the [Secretary] is liable for not reasonably responding to the events of which it became aware," Br. of Appellant at 13; (2) "whether the [Secretary] had established a pattern or practice of treating [b]lack employees differently from . . . [w]hite employees due to discriminatory motivation," *id.* at 15; (3) "whether [her supervisor, Ron Smith,] showed a pattern or practice of demonstrating racial and gender animus toward [b]lack females under his supervision," *id.*; and (4) "whether [management from the Internal Revenue Service's Stakeholder Partnership, Education and Communication ("SPEC") Division] was negligent in their responsibility to exercise reasonable care [towards Ms. Gooden] after they were put on notice of discriminatory behavior and a hostile work environment" allegedly created by Mr. Smith, *id.* at 23–26. Ms. Gooden forfeited all four of these issues by not raising them in the district court.

With respect to the first and fourth issues, Ms. Gooden claims that her higher-level managers, Juliet Garcia and Michael McBride, should have, after being placed on notice, responded to and investigated her allegations of discrimination against Mr. Smith.  *See id.* at 13.  According to Ms. Gooden, "[m]anagement's refusal to effectively address the reports of illegal conduct under their direct line of management is unlawful and violative of agency and EEOC policy." *Id.*

Ms. Gooden did not articulate this theory of liability concerning Ms. Garcia and Mr. McBride in her response to the government's motion for summary judgment before the district court.  *See, e.g.*, D.E. 62 at 20–21 (accusing Mr. McBride of retaliating against Ms. Gooden's protected activity by denying her requests for desk audits, but not arguing that the Secretary is liable for Mr. McBride's alleged failure to respond to Ms. Gooden's accusations towards Mr. Smith).  The closest she gets is a blanket allegation that Mr. Smith's discrimination was "tolerated by Mr. McBride and Ms. Garcia." *Id.* at 14.  Yet Ms. Gooden never fleshes out whether she was arguing that the Secretary's liability stemmed from Mr. McBride's and Ms. Garcia's alleged failure to respond, or simply from Mr. Smith's underlying conduct.  *See also id.* at 17 (generally arguing that "[the Secretary] is liable for not reasonably responding to the events of which it was aware," but never explaining whether those "events" are Mr. Smith's alleged

6

conduct, or Mr. McBride's and Ms. Garcia's alleged tolerance of Mr. Smith's conduct).

This cursory, unsubstantiated allegation is not enough for Ms. Gooden to preserve the theory. *See also* D.E. 50-2 (containing no facts pertaining to Mr. McBride's and Ms. Garcia's alleged failure to respond and investigate). Accordingly, we will not consider the first and fourth issues because Ms. Gooden did not fairly present them before the district court. *See Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1511 n.30 (11th Cir. 1996) (refusing to consider claims or arguments not fairly presented to the district court in summary judgment proceedings).

The second and third issues enumerated by Ms. Gooden concern an alleged "pattern or practice" of treating black females differently. *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000) (explaining that "pattern or practice discrimination" is a "discrete" theory of liability for discrimination under Title VII). Ms. Gooden alleges that she and a black female coworker performed tasks above their grade without proper compensation, yet Mr. Smith would routinely promote white employees "prior to beginning higher grade work." *See* Br. of Appellant at 15.

Again, Ms. Gooden did not proceed under a "pattern or practice" theory of discrimination before the district court at summary judgment, *see* D.E. 62, so she

has not preserved that issue for appeal. *See Redwing Carriers*, 94 F.3d at 1511 n.30. But even if we were to consider her argument, Ms. Gooden would still lose because she failed to present sufficient evidence "to demonstrate that [the alleged] unlawful discrimination has been a regular procedure or policy followed by [the Secretary]." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977). Two instances of black females performing work outside their pay grade may be problematic depending on the context, but without more information there is no way any reasonable juror could make that determination. *Cf. Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1388–89 (11th Cir. 1983) (holding that the plaintiff's statistical evidence was insufficient to establish pattern or practice of discrimination because the plaintiff failed to contextualize the data). Ms. Gooden has not provided the necessary context here, and her conclusory allegation that white employees are treated differently is insufficient to defeat summary judgment. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) ("[C]onclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment.").

## IV

Having decided that the four issues specified by Ms. Gooden for appellate review have been forfeited, we could stop here and ignore any remaining issues in Ms. Gooden's initial brief that she did not properly identify and brief as required

by the federal rules of appellate procedure. *See* Fed. R. App. P. 28(a)(5) (providing that an appellant's initial brief must contain, "under appropriate headings," "a statement of issues presented for review").

Nevertheless, we give Ms. Gooden the benefit of a liberal construction of her *pro se* appeal—as we must—and identify the following summary judgment issues properly preserved for our consideration: (1) whether the district court erred when it concluded that Ms. Gooden failed to establish a *prima facie* case of disparate treatment based on race, gender, and disability; (2) whether the district court erred when it determined that she failed to establish a *prima facie* case of hostile work environment based on race, gender, and disability; and (3) whether the district court erred when it found that she failed to establish a *prima facie* case of retaliation for engaging in protected activity.

## A

Ms. Gooden alleged that, during his tenure as her supervisor from November of 2008 to December of 2011, Mr. Smith made certain unlawful comments and decisions, as well as engaged in physical harassment, because of Ms. Gooden's race, gender, and disability. She argued that these comments, decisions, and conduct constituted discrete adverse employment actions. The district court disagreed, concluding that Ms. Gooden had failed to establish a *prima facie* of disparate treatment because none of the alleged comments, decisions, and physical

9

harassment amounted to an adverse employment action. The district court further ruled that Ms. Gooden had not shown that any of the alleged incidents were based on her race, gender, or disability, as required to prove disparate treatment.

Title VII prohibits employment discrimination on the basis of race or gender, 42 U.S.C. § 2000e-2(a), whereas the Rehabilitation Act prohibits discrimination on the basis of a disability, 29 U.S.C. § 794(a). To prevail on a disparate treatment claim, a plaintiff must generally demonstrate that an employer intentionally discriminated against her on the basis of a protected characteristic. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

When, as here, a Title VII or Rehabilitation Act employment discrimination claim is based on circumstantial evidence (because the plaintiff lacks direct evidence of intentional discrimination), courts usually apply the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See, e.g.*, *Kidd v. Mando Am. Corp.,* 731 F.3d 1196, 1202 (11th Cir. 2013) (Title VII); *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir. 1995) (explaining that Title VII's burden-shifting rules apply to claims brought under the Rehabilitation Act). Under that framework, "a plaintiff must first create an inference of discrimination through her *prima facie* case." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016). "Once the plaintiff has made a *prima facie* case, a rebuttable presumption arises that the

10

employer has acted illegally." *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1264 (11th Cir. 2010). "The employer can rebut that presumption by articulating one or more legitimate non-discriminatory reasons for its action." *Id.* "If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Id.*

"To establish a *prima facie* case of disparate treatment in an employment discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Trask*, 822 F.3d at 1192 (quoting *Burke–Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006)) (internal quotation marks omitted). An adverse employment action is a decision or action by the employer that "*serious[ly] and material[ly]* change[s] . . . the terms, conditions, or privileges of [the employee's] employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).

In this case, the comments, decisions, and physical harassment alleged by Ms. Gooden are insufficient to establish a *prima facie* case of disparate treatment because most do not amount to an adverse employment action. And, to the extent some of the alleged conduct does, Ms. Gooden still fails to establish a *prima facie*

11

case because there is no evidence that a similarly situated individual outside her protected class was treated more favorably.  We address each of the alleged adverse employment actions in turn.

First, Ms. Gooden alleged that Mr. Smith made several discriminatory comments.  Mr. Smith purportedly once described another black female employee's reorganization of a closet as "plantation work," and previously belittled Ms. Gooden's undergraduate education at a historically black college or university.  *See* D.E. 50-2 ¶¶ 20, 22.  And, upon denying her request for training, told Ms. Gooden that the agency did not "have money for *people like you* to go to training."  *Id.* ¶ 19 (emphasis added).  On yet another occasion, Mr. Smith allegedly ridiculed the accent of an employee who appeared to be of Middle Eastern descent.  *See id.* ¶ 25.

Although we certainly do not condone the use of such language (assuming the statements were made), we have repeatedly held that "the mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not rise to a Title VII disparate treatment violation.  *See Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 (11th Cir. 1982) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)) (internal quotation marks omitted).  This is particularly true where, as here, we do not know the context in which some of these comments were made.  *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (noting that

12

words may be racially charged or benign depending on several factors, including context).   And, more importantly, where there is no evidence that the alleged remarks were made in connection with any employment decision affecting Ms. Gooden's pay, tenure, or work responsibilities.  *Cf. Perez v. Thorntons, Inc.*, 731 F.3d 699, 701, 711 (7th Cir. 2013) (explaining that manager's statements that he "did not like" Hispanics and "work[ing] with women[ ] [because they] always have something to do with the kids or they have a period," would not have sufficed, by themselves, to establish discriminatory termination).

Second, Ms. Gooden alleged that Mr. Smith stalled, and at times denied, training she had requested.  A denial of training may rise to the level of an adverse employment action when "the training is materially related to the employee's job responsibilities or possibilities for advancement under limited circumstances." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1436 n.16 (11th Cir. 1998) (ADEA context).  *See also Griffith v. City of Des Moines,* 387 F.3d 733, 737 (8th Cir. 2004) ("An employer's denial of an employee's request for training is not, *without more*, an adverse employment action.") (emphasis added).  Ms. Gooden has not presented any evidence about the specific training she was allegedly denied and how, if at all, that denial limited her advancement opportunities, especially in light of the perfect employment reviews she repeatedly received under Mr. Smith. The one concrete example she gives, the alleged attempt to preclude her attendance

13

at a "Blacks In Government" training session, could not have affected her advancement opportunities because she ultimately did attend. Ms. Gooden therefore failed to show that the alleged denial and stalling of training amounted to an adverse employment action. *See Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 846 (D.C. Cir. 2001) (affirming summary judgment on plaintiff's religion-based disparate treatment claim in part because plaintiff could not show that he was "hobbled" by the inadequate training he was allegedly given because of his religion).

Third, Ms. Gooden alleged that she was denied a desk-audit request on discriminatory grounds. The government argued that Ms. Gooden failed to exhaust her administrative remedies for this particular allegation. The magistrate judge, noting that Ms. Gooden did not address this argument in her response to the government's motion for summary judgment, also found that Ms. Gooden failed to exhaust her administrative remedies because there was no evidence that she had sought EEO counseling within 45 days of the alleged incident. *See* D.E. 66 at 20–22. Timely or not, we will not consider this alleged adverse employment actions because Ms. Gooden abandoned it by not addressing it in her response to summary judgment. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

14

Fourth, Ms. Gooden alleged two instances of physical harassment by Mr. Smith. The first occurred on September 25, 2009, when Mr. Smith "pushed her and knocked her down" because she was "about to participate in protected activity." D.E. 50-2 ¶ 21. The other incident of unwanted physical contact was in May of 2010, when Mr. Smith allegedly pushed a black woman standing next to Ms. Gooden's desk. *See id.* ¶ 28. While these allegations are problematic (to say the least), Ms. Gooden failed to present sufficient evidence from which a reasonable juror could conclude that the alleged physical harassment was motivated by Ms. Gooden's race, gender, or disability. With respect to the incident involving Ms. Gooden personally, she specifically alleged that the physical harassment was Mr. Smith's attempt at deterring her future protected activity, meaning that even she acknowledges it was not based on race, gender, or disability. As for the other isolated episode of unexplained physical harassment, it was against Ms. Gooden's coworker and thus cannot serve as Ms. Gooden's adverse employment action on a disparate treatment theory.

Finally, Ms. Gooden alleged that certain files saved on her computer were deleted by unknown individuals and that, on one occasion, an employee was seen typing on her computer and reporting back to Mr. Smith. *See* D.E. 50-2 ¶¶ 23, 26, 36. These general allegations, based on mere speculation and hunches, in no way

15

establish that any alleged tampering was race-, gender-, or disability based.  Thus, they do not establish a *prima facie* case of disparate treatment under Title VII.

In sum, various reasons sink Ms. Gooden's disparate treatment claims.  For the most part, Ms. Gooden simply failed to establish that she suffered an adverse employment action.  And as for the more borderline actions and decisions, she did not provide sufficient evidence demonstrating that they were based on her race, gender, or disability.

**B**

Ms. Gooden claimed that she suffered a hostile work environment as a result of her race, gender, and disability.  The district court found that Ms. Gooden's claims failed because she had not shown that the alleged harassment was sufficiently severe or pervasive and that it was based on her protected characteristics.

To establish a *prima facie* case of hostile work environment, a plaintiff must show that (1) she is a member of a protected group; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was so severe and pervasive that it altered the terms or conditions of her employment; and (5) the employer was vicariously or directly liable for the environment.  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).  The totality of the circumstances determines whether a

16

plaintiff's alleged harassment is sufficiently severe and pervasive to be unlawful. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Ms. Gooden's claims of hostile work environment fail for many of the same reasons as her disparate treatment claims. She has not shown that the alleged unlawful conduct was based on her race, gender, or disability, as opposed to merely stemming from incivility. For example, though some of Mr. Smith's alleged comments and actions are questionable, many concerned people outside Ms. Gooden's protected class and were relatively infrequent over the course of his nearly three-year tenure as her supervisor such that they are not, as a matter of law, sufficiently severe or pervasive. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that "conduct must be extreme to amount to a change in the terms and conditions of employment" and that "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not suffice) (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)).

## C

Ms. Gooden also alleged that Mr. Smith retaliated against her after she contacted the EEO around October of 2009. The district court evaluated the twelve incidents of retaliation Ms. Gooden alleged in her amended complaint and concluded that three of the incidents were not materially adverse to her

17

employment and that the remaining were too remote in time to Ms. Gooden's protected activity.

The majority of the alleged incidents only appear in Ms. Gooden's amended complaint, D.E. 26, and not in the Secretary's statement of undisputed material facts, D.E. 50-2. Unlike the district court and magistrate judge, we decline to consider any unsupported allegations not stipulated to by the Secretary in his motion for summary judgment. *See Lujan*, 504 U.S. at 561 (explaining that a plaintiff may not rely solely on the allegations in her complaint at the summary judgment stage). And so, we are left with four allegations in support of Ms. Gooden's retaliation claim: (1) Mr. Smith pushed Ms. Gooden because he knew that she was about to participate in protected activity, apparently in order to deter her, *see* D.E. 50-2 ¶ 21; (2) unknown individuals deleted certain, unspecified files from Ms. Gooden's work computer, *see id.* ¶¶ 23, 26, 36; (3) Mr. Smith asked Ms. Gooden to withdraw her EEO complaint in exchange for a more favorable performance appraisal, *see id.* ¶ 29; and (4) Kim Prince, the manager that replaced in Mr. Smith in December of 2011, *see id.* ¶ 16, ignored Ms. Gooden in the workplace because she had previously filed an EEO complaint, *see id.* ¶ 34.

Title VII and the Rehabilitation Act prohibit employers from retaliating against an individual because she has opposed a practice prohibited by those acts or participated in filing a charge of discrimination. *See* 42 U.S.C. § 2000e-3(a);

18

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (explaining that retaliation claims under the American with Disabilities Act and Title VII are analyzed identically); 29 U.S.C. § 794 (ADA and RA claims apply same standards).   To make out a *prima facie* case of retaliation, the plaintiff must show that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the two events.   *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012).    In the retaliation context, an action is materially adverse when it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."   *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).   A plaintiff establishes a causal relation by "prov[ing] that the protected activity and the negative employment action are not completely unrelated."   *See Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (quoting *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571–72 (11th Cir. 1993)).   None of the alleged incidents establish a *prima facie* case of retaliation.

The alleged physical harassment was not retaliatory because it occurred *before* Ms. Gooden engaged in protected activity.   *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We hold that, in a retaliation case, when an employer contemplates an adverse employment action before an employee engages

19

in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."). It is also entirely speculative that the push was in response to any protected activity, since Ms. Gooden did not explain how, exactly, she knew Mr. Smith's intentions. And Ms. Gooden's subjective conclusion is not enough to create a genuine dispute. *Cf. Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989) (holding that the plaintiff's subjective conclusions about her employer's intentions were not enough to create a genuine issue on pretext).

Ms. Gooden's allegations that unknown individuals accessed her work computer similarly do not establish a *prima facie* case of retaliation. Those allegations are based on unsubstantiated speculation about the nature of the alleged unauthorized computer use. Such conclusory allegations, again, do not survive summary judgment.

The alleged attempted bribery, the third incident, also fails because it is undisputed that Mr. Smith was already awarding Ms. Gooden perfect annual performance appraisals. *See* D.E. 50-2 ¶ 12. In fact, Mr. Smith increased Ms. Gooden's evaluation scores to 5/5 after becoming her supervisor and never stopped rating her perfectly. *See id.* On this read, the promise of an impossibly higher annual performance appraisal score could not dissuade a reasonable worker from engaging in protected activity.

20

The last alleged incident likewise fails because merely being "ignored," without any evidence that this somehow affected the terms of her employment, such as her job responsibilities, does not constitute a materially adverse action. *See Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 831 (8th Cir. 2002) ("[I]in employer retaliation cases, 'ostracism and rudeness by supervisors and co-workers do not rise to the level of an adverse employment action.'") (quoting *Gagnon v. Sprint Corp.*, 284 F.3d 839, 850 (8th Cir. 2002)).

## V

Ms. Gooden filed two motions for default with the district court, arguing that the Secretary had failed to respond to her initial complaint and meet various pretrial deadlines. *See* D.E. 17, 55. The district court, adopting the magistrate judge's recommendations, denied both motions. *See* D.E. 29, 69. Ms. Gooden appeals those denials. We review the denial of a motion for default judgment for abuse of discretion. *See Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002).

The district court did not abuse its discretion by refusing to enter a default judgment against the Secretary. As the district court and magistrate judge noted, the Secretary's answer was timely because the Secretary had secured extensions of time to answer Ms. Gooden's complaint. *See, e.g.*, D.E. 18. Moreover, even if the Secretary's answer was untimely, a default judgment would not have been required

21

or warranted because the Clerk had not yet entered the prerequisite default. *See* Fed. R. Civ. P. 55(a).

## VI

Finally, Ms. Gooden argues that the district court erroneously concluded that Title VII preempted her claims for intentional and negligent infliction of emotional distress brought under the Federal Tort Claims Act. We disagree. Title VII is the exclusive remedy for redressing federal employment discrimination. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 821 (1976). Because Ms. Gooden's FTCA claims are based on the same alleged conduct as her employment discrimination and retaliation claims, they are preempted by Title VII.

## VII

Accordingly, we affirm the district court's grant of summary judgment in favor of the government, the denial of Ms. Gooden's motion for default judgment, and the dismissal of the FTCA claims.

**AFFIRMED.**