# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3623

_____

Jennifer Paskert

*Plaintiff - Appellant*

v.

Kemna-ASA Auto Plaza, Inc., doing business as Auto Smart of Spirit Lake

*Defendant*

Brent Burns; Brent Weringa; Auto$mart, Inc.; Kenneth Kemna; Kemna Motor Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: December 11, 2019
Filed: February 13, 2020

_____

Before SMITH, Chief Judge, GRASZ and STRAS, Circuit Judges.

_____

GRASZ, Circuit Judge.

Jennifer Paskert seeks review of the district court's[1] grant of summary judgment, in which the court found Paskert failed to exhaust administrative remedies in her retaliation claim, failed to allege a sex discrimination claim, and failed to show defendant's conduct was sufficiently severe or pervasive to constitute a hostile work environment claim under Title VII, or the Iowa Civil Rights Act ("ICRA"). For the reasons set forth below, we affirm.

## I. Background

Paskert was a sales associate of Auto$mart, Inc. ("Auto Smart") in Spirit Lake, Iowa, from May to November 2015.[2] Auto Smart is a "buy here, pay here" used-car dealership and part of a larger group of businesses operated by Kenneth Kemna. During her tenure at Auto Smart, Paskert was supervised by Brent Burns, the manager of the Spirit Lake Auto Smart location. James Bjorkland was also a sales associate employed at the Spirit Lake location.

When Paskert was hired, her job duties included car sales, collections, and preparing cars for sale. The training for these jobs included role-playing exercises where the sales associates would take turns giving the "sticker presentation" for particular cars. Paskert was also trained on the collections portion of her role.

Paskert alleges she was prevented from completing her training. She claims this was because, when she tried to shadow Burns or Bjorkland on the lot while they were pitching cars to customers, Burns would send her back inside to answer the phone.

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

[2]The facts are recited viewing the record in the light most favorable to the nonmoving party. *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 940–41 (8th Cir. 2019).

The evidence shows Burns's behavior as a manager was volatile. Burns frequently lost his temper with everyone, he ridiculed and screamed at his employees, he referred to female customers using derogatory names, and threw objects in the office.

Evidence also shows Burns's treatment of women was demeaning, sexually suggestive, and improper. Bjorkland and Paskert both testified to having heard Burns remark that he "never should have hired a woman" and wonder aloud if he could make Paskert cry. Burns also openly bragged at work about his purported sexual conquests. On one occasion, Bjorkland witnessed Burns attempt to rub Paskert's shoulders and say he was going to give her a hug. Bjorkland believed the contact was unwelcome. On another occasion, after Paskert criticized the way Burns treated women and wondered how his wife tolerated such behavior, Burns replied, "Oh, if you weren't married and I wasn't married, I could have you . . . You'd be mine . . . I'm a closer."

Both Paskert and Bjorkland testified that they reported these incidents to Brent Weringa, the Director and Supervising Manager of Auto Smart.

In the fall, Burns met with Kenneth Kemna. Kenneth suggested that Paskert should be terminated because in her four months on the job she had not sold any cars, yet was making the same amount as Bjorkland who was doing all of the sales work. Burns pushed back; he proposed that Paskert be retained, but with a different job title and pay structure.

In November 2015, Paskert was offered a new payment plan and job title whereby she would shift from a sales associate to a collections management and sales support role. As a result, she would likely make less money. Paskert understood this new offer as a demotion.

Three days after Paskert accepted the new payment plan and job title, she was discharged for insubordination and for "refus[ing] to discuss what was bothering her on Friday, November 6th."  In the discharge report, Burns further justified the discharge by criticizing Paskert's sales record and use of profanity at work.  He also claimed that, immediately after the discharge, Paskert threw candy all over the desk and took her computer passwords with her.  Paskert denies Burns's allegations, claiming she never threw anything nor did she take information when she was terminated.

In January 2016, Paskert filed a complaint with the Iowa Civil Rights Commission ("ICRC") alleging a hostile work environment created and maintained by Burns, Weringa, and Kemna.  The ICRC issued a right-to-sue letter on November 21, 2016, and so Paskert proceeded to file suit before the federal district court.  Paskert's federal complaint included a claim for sex discrimination based on a hostile work environment, and retaliation.  The district court granted the defendants' motion for summary judgment.

## II.  Analysis

We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the non-moving party and granting all reasonable inferences in her favor.  *Withers v. Johnson*, 763 F.3d 998, 1002 (8th Cir. 2014).  Additionally, because Paskert presents no separate arguments under the ICRA, which was modeled after Title VII of the United States Civil Rights Act, we address her state civil rights claims together with her Title VII claims.  *See Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003); *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999).

## A. Hostile Work Environment

Title VII prohibits sexual harassment that takes the form of a hostile work environment. An employee can sue under Title VII if the harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (alteration in the original and internal quotation omitted). Although the Supreme Court's precedent is clear that "Title VII comes into play before the harassing conduct leads to a nervous breakdown," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993), our Eighth Circuit precedent sets a high bar for conduct to be sufficiently severe or pervasive in order to trigger a Title VII violation.

This court has previously described the "boundaries of a hostile work environment claim," and demonstrated that some conduct well beyond the bounds of respectful and appropriate behavior is nonetheless insufficient to violate Title VII. *McMiller v. Metro*, 738 F.3d 185, 188 (8th Cir. 2013). In *McMiller* the court outlined several cases illustrating conduct that was not sufficient to amount to actionable severe or pervasive conduct. First, in *McMiller* we described the facts of *Duncan v. General Motors Corp.* in which:

> a supervisor sexually propositioned [the employee], repeatedly touched her hand, requested that she draw an image of a phallic object to demonstrate her qualification for a position, displayed a poster portraying the plaintiff as the 'president and CEO of the Man Hater's Club of America,' and asked her to type a copy of a 'He-Men Women Hater's Club' manifesto.

*Id.* at 188 (citing *Duncan*, 300 F.3d 928, 931–35 (8th Cir. 2002)). The court held these facts were not sufficiently severe or pervasive enough to establish a Title VII hostile work environment claim. *Id.* Similarly, in *McMiller* the court summarized the facts of *LeGrand v. Area Resources for Community and Human Services*, where it determined even more outrageous conduct, including graphic sexual propositions and

even incidental unwelcome sexual contact, did not establish severe or pervasive conduct sufficient to be actionable. *Id.* at 189 (citing *LeGrand*, 394 F.3d 1098, 1100–03 (8th Cir. 2005)).

In light of these precedents, Burns's alleged behavior, while certainly reprehensible and improper, was not so severe or pervasive as to alter the terms and conditions of Paskert's employment. Unlike even the plaintiffs in *Duncan*, *LeGrand*, or *McMiller*, Paskert only alleges one instance of unwelcome physical contact, one or two statements where Burns stated he could "have Paskert," and several statements about how he never should have hired a female and wanted to make Paskert cry. All of this behavior is inappropriate and should never be tolerated in the workplace, but it is not nearly as severe or pervasive as the behavior found insufficient in *Duncan* and *LeGrand*. Assuming Paskert's allegations are true, Auto Smart and Burns should both be embarrassed and ashamed for how they treated her. Nevertheless, we may only ask whether their behavior meets the severe or pervasive standard applied by this circuit, and it does not. Therefore, the district court properly granted the motion for summary judgment regarding the hostile work environment claim under Title VII and the ICRA.

## B. Retaliation

On appeal, Paskert argues the district court erroneously dismissed her retaliation claim for failing to exhaust her administrative remedies. In the context of employment discrimination, the "[a]dministrative remedies are exhausted by the timely filing of a charge and the receipt of a right-to-sue letter." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002). Regarding a particular claim, the Eighth Circuit "deem[s] administrative remedies exhausted as to all incidents of discrimination that are 'like or reasonably related to the allegations of the [administrative] charge.'" *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994) (alteration in original) (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir.

-6-

1986)).  Thus, the scope of a civil suit before a district court for retaliation under Title VII is limited to the claims properly brought before the appropriate administrative body, here the ICRC.

Paskert failed to exhaust her retaliation claim.  Question 18 of the ICRC Complaint Form asked, "If you have previously complained to anyone within the organization or the ICRC or reported discrimination or participated as a witness, do you believe you have suffered an adverse action or been treated differently since you complained about discrimination?"  The subpart to this question specifically asked, "If yes, how were you retaliated against and by whom?"  Paskert left both portions of Question 18 blank and did not specifically allege retaliation in any other portion of her ICRC complaint.

Paskert argues the retaliation claim can be gleaned or reasonably inferred from her narrative answers to other questions, most specifically Question 27 of the ICRC Questionnaire.  In response to this question Paskert described how Burns stated he should not have hired a woman, tried to make her cry, yelled and threw objects, required Paskert to answer phones like a secretary, and prevented her training.  But, Paskert fails to describe how her termination or demotion was caused by her reporting harassment, complaining of sexual harassment, or participating in a harassment investigation, as required for a Title VII retaliation claim.  Under our precedent, "it is well established that retaliation claims are not reasonably related to underlying discrimination claims," and therefore a retaliation claim must be distinctly and separately alleged.  *Wallin v. Minn. Dep't of Corrs.*, 153 F.3d 681, 688–89 (8th Cir. 1998).

Here, although Paskert claims she reported Burns's inappropriate behavior to Weringa, the narrative answers in her ICRC Complaint and Questionnaire fail to draw a connection between her reporting of Burns's behavior and the adverse employment actions Auto Smart took against her.  And while we read ICRC submissions

-7-

charitably, we cannot "invent[], *ex nihilo*, a claim which simply was not made." *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996). Because Paskert failed to answer Question 18, which directly asked about retaliation, and also failed to separately allege a retaliation claim before the ICRC, we conclude there was no distinctly-alleged retaliation claim before the ICRC. Therefore the district court properly found that she failed to exhaust her administrative remedies before suing.

## C. Employment Discrimination Based on Sex

In a footnote of the district court's opinion, the court noted "Paskert has not advanced a claim of discriminatory treatment, distinct from hostile work environment, based on sex." The court went on to note that although Paskert's complaint used the term "discrimination based on sex," all of her allegations focus on a claim of a hostile work environment. Because hostile work environment claims are separate from sex discrimination claims, and because Paskert failed to make any separate arguments regarding a claim for sex discrimination in her summary judgment resistance briefs, the district court concluded the claim was not before the court. We agree.

While it is true Paskert used the phrase "discrimination based on sex" to describe the first claim in her second amended complaint, she did not allege a particular theory of relief in the complaint or facts to support such a theory. Instead, she used buzzwords like discrimination, retaliation, and hostile work environment as broad, catch-all terms for her claims. Paskert never set out the prima facie elements for a sex discrimination claim in any of her briefing, nor did she argue that her circumstances met such requirements. And, Paskert did not oppose the granting of summary judgment on sex discrimination grounds. Rather, she argued there was no genuine dispute of material fact regarding the creation of a "hostile work environment" and no genuine dispute that her "termination was retaliation." As such, Paskert failed to allege a claim for sex discrimination distinct from her hostile work environment claim.

Additionally, even if Paskert had properly pled a sex discrimination claim, she waived it when she failed to oppose summary judgment on those grounds. The "failure to oppose a basis for summary judgment constitutes waiver of that argument," because the non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). "It was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact." *Id.* at 735. Thus, even if Paskert had properly pled a sex discrimination claim, her failure to oppose such a claim on summary judgment means she waived the argument on appeal.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____